Sheldon WEISS, Plaintiff/Appellant,

v.

Thomas ALFORD,
Defendant/Respondent.

No. ED 91200.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 28, 2008.

Andrea L. Weiss, St. Louis, MO, for appellant.

Michael K. Daming, Murphy Wasinger, L.C., St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Judge.

Plaintiff, a landowner, appeals from the entry of summary judgment against him in his trespass action against defendant, his

next door neighbor. The trial court entered summary judgment on the ground that defendant established title to a strip of land belonging to plaintiff by adverse possession. We reverse and remand.

*PROCEDURAL BACKGROUND*

In August 2007, plaintiff, proceeding *pro se*, filed a petition, which, as amended, sought to recover damages for trespass on the ground that defendant had encroached on his property because, approximately a year before the lawsuit, defendant had constructed a concrete driveway, part of which covered a strip of plaintiff's land. Defendant filed an answer in which he raised the affirmative defenses of title by adverse possession and easement by prescription. Defendant thereafter filed a motion for summary judgment based on these affirmative defenses. In his statement of uncontroverted facts, defendant set out the ownership of the two properties, which was not disputed, and then alleged the following:

3. Between the Weiss Property and Alford Property exists a driveway which is part of the Alford Property (the "Driveway"). *See* Affidavit of Thomas Alford, attached hereto as Exhibit 1 at Paragraph 4.

4. The Driveway has been in existence since prior to 1990, and remains in existence today. *See* Affidavit of Thomas Alford, attached hereto as Exhibit 1 at Paragraph 5.

5. Between the Weiss Property and Alford Property also exists a fence post. *See* Affidavit of Thomas Alford, attached hereto as Exhibit 1 at Paragraph 6.

6. The Driveway is, and has been since prior to 1990, on the Alford Property side of the fence post referenced in the preceding paragraph. *See* Affidavit of Thomas Alford, attached hereto as Exhibit 1 at Paragraph 7.

7. From before 1990 until the present, the Driveway has been occupied and possessed exclusively by Thomas Alford and/or other occupants of the Alford Property to the opposition and exclusion of any and all claims of occupants of the Weiss Property. *See* Affidavit of Thomas Alford, attached hereto as Exhibit 1 at Paragraph 8.

8. The ownership of the Alford Property and Driveway by Defendant Thomas Alford and/or other occupants of the Alford Property has been conspicuous, widely recognized, and commonly known from 1990 to the present. *See* Affidavit of Thomas Alford, attached hereto as Exhibit 1 at Paragraph 9.

In his response, plaintiff denied each of paragraphs 3 through 8, and supported his denials with references to a professional property boundary survey of his lot, attached as Exhibit 1; his affidavit, attached as Exhibit 2; and the affidavits of former owners of defendant's property, attached as Exhibits 3 and 4. The property boundary survey showed that a concrete driveway on defendant's lot went over plaintiff's property boundary line, and that there was a fence post on plaintiff's lot, inside of plaintiff's boundary. Plaintiff's affidavit attested that the concrete driveway was poured in 2005; that the concrete driveway "trespassed" on his property; that the concrete driveway sits outside the borders of a prior gravel driveway that existed from 1990 to 2005; that the concrete driveway had not existed in its current location for ten years prior to filing the lawsuit; and that the portions of the concrete driveway that encroach on plaintiff's property were not occupied or exclusively used by plaintiff for ten years prior to filing the lawsuit. Plaintiff also attested that he owned the fence post and that it was 1.96 feet within plaintiff's boundary line. The former owners attested that the gravel

driveway did not encroach on plaintiff's property in the year 2000 or prior to that.[1]

The trial court entered summary judgment in defendant's favor, finding that the fence post served as the "boundary marker" between the two properties, that the driveway had been on defendant's side of the fence post for a period of ten years preceding the commencement of the lawsuit, and that defendant had shown the elements of adverse possession of the land on his side of the fence post.

## DISCUSSION

Plaintiff raises nine points on appeal. In his fifth point, plaintiff contends that the trial court erred in granting summary judgment based on its finding that a fence post served as a boundary marker because defendant's motion did not set out any facts supporting such a conclusion, and adverse possession cannot be premised on the existence of the fence post. For his seventh point, plaintiff asserts that the trial court erred in entering summary judgment against him because there was a genuine issue of material fact on the location of the prior gravel driveway and the length of time the current driveway was in existence. We find the fifth and seventh points dispositive and do not reach the remaining points.

Summary judgment is designed to permit the trial court to enter judgment, without delay, when the moving party has demonstrated on the basis of facts as to which there is no genuine dispute a right to judgment as a matter of law. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Rule 74.04(b) allows a defending party to file a motion for summary judgment. A defending party may establish a right to summary judgment by showing "that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense." *ITT*, 854 S.W.2d at 376.

We review the grant of summary judgment *de novo*. *Id*. We view the record in the light most favorable to the party against whom summary judgment was entered and accord the non-movant the benefit of all reasonable inferences from the record. *Id*. We take as true every fact set forth by affidavit or otherwise in support of the moving party's summary judgment motion unless the non-movant has denied it in its response. *Id*.; *Glasgow Enterprises, Inc. v. Bowers*, 196 S.W.3d 625, 629 (Mo.App.2006).

Once the moving party has made a *prima facie* case for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the party's pleading, but his response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e). In his or her response, the non-movant is required "to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *ITT*, 854 S.W.2d at 381. If the non-movant does not make such a showing, judgment is proper for the movant. *Id*. at 382. A "genuine issue" exists

1. Defendant subsequently filed an untimely reply memorandum to which he attached new unnotarized "affidavits" of the former owners. We do not consider the reply memorandum for two reasons: First, it was filed out of time, in violation of Rule 74.04(c)(3); second, the reply was supported by two affidavits that were not notarized and were therefore not competent evidence on a motion for summary judgment. *See Mueller v. Bauer*, 54 S.W.3d 652, 657–58 (Mo.App.2001). In any event, the reply did not show that the facts necessary to support the defenses of adverse possession and prescriptive easement were undisputed.

where the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." *Id.* "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *Id. See also, Clay County Realty Co. v. City of Gladstone,* 254 S.W.3d 859, 863 (Mo. banc 2008). The issue is not whether the facts are true, but whether they are disputed. *Birdsong v. Christians,* 6 S.W.3d 218, 224 (Mo.App. S.D. 1999). Disputed questions of fact should be presented to the jury. *Id.*

■ To prevail on his summary judgment motion on his claim of adverse possession, defendant needed to "first set forth undisputed facts which support each and every element of [his] adverse possession claim." *Rodgers v. Threlkeld,* 80 S.W.3d 532, 534 (Mo.App.2002). Those elements are:

> First, the possession must be actual. There must be physical control and use of the disputed property for the statutory period. Second, the possession of the disputed tract must be hostile to other competing claims to the property. Third, that possession must be open and notorious, such that those individuals having competing claims to the property actually know or should have known of that possession. Fourth, possession must be exclusive, such that others with competing claims to the property are wholly excluded from the property. Lastly, the possession must be continuous for the statutory period of ten years.

*Id.* (internal citations omitted) In addition, a party claiming title to real estate must establish the precise location and boundaries of the property claimed. *Zweemer v. Cantrell,* 823 S.W.2d 531, 535 (Mo.App. 1992).

■ Likewise, to prevail on his alternative claim of prescriptive easement, defendant had to set out undisputed facts supporting the elements of a prescriptive easement. A prescriptive easement is established by use that is "continuous, uninterrupted, visible, and adverse for a period of ten years." *Shapiro Bros., Inc. v. Jones–Festus Properties, L.L.C.,* 205 S.W.3d 270, 274 (Mo.App.2006) (citing *Reardon v. Newell,* 77 S.W.3d 758, 761 (Mo.App.2002)).

These claims are both heavily factual in nature, leading the Rodgers court to observe that "it is difficult to conceive of a circumstance where a claimant asserting adverse possession could succeed upon his or her claim through the mechanism of summary judgment." *Rodgers,* 80 S.W.3d at 534.

## I.  *The Fence Post*

We first consider plaintiff's fifth point, which challenges the trial court's findings and conclusions based on a fence post and was the sole basis given by the trial court for its judgment. In his motion, defendant alleged and attested that a "fence post" existed "between" the properties since prior to 1990, and that "the Driveway" had been on his side of that fence post since 1990. Plaintiff denied that the post was "between" the properties, and his attached affidavit and survey showed it to be within the surveyed lot lines of his property. The trial court entered the following judgment:

> Cause called on Defendant Thomas Alford's Motion for Summary Judgment. Upon being duly advised on the premises, the Court hereby GRANTS Defendant Thomas Alford's Motion for Summary Judgment, specifically finding that the fence post standing between Plaintiff and Defendant's respective properties (2613 Louis Avenue, Brentwood, Missouri and 2609 Louis Avenue, Brentwood, Missouri) serves as the boundary marker between said properties, and further finding that the driveway com-

plained of in Plaintiff's Petition and Amended Petition has always been contained within Defendant Alford's side of said fence post for a period of ten (10) years preceding the commencement of the instant lawsuit.

The Court specifically finds that Defendant Thomas Alford's (including his predecessors in possession of the Alford Property) possession of the area up to the fence post between the respective properties has been hostile, actual, open and notorious, exclusive, and continuous for a ten-year period prior to Weiss' commencement of the instant lawsuit.

Plaintiff's Amended Petition against Defendant Thomas Alford is therefore dismissed with prejudice. Costs assessed against Plaintiff.

In reaching its conclusions, the court engaged in a two-step procedure, in which it first found that the fence post, which was not on the surveyed lot line, was a "boundary marker," and then found defendant and his predecessors had openly, exclusively, and hostilely possessed the area "up to the fence post" for ten years. Defendant argues that the court's findings were proper under the theory of boundary by acquiescence,[2] as well as under the theory of adverse possession. We disagree.

The court's judgment erroneously combines the theories of boundary by acquiescence with the theory of adverse possession. See Flowers v. Roberts, 979 S.W.2d 465, 472 (Mo.App.1998); Conduff v. Stone, 968 S.W.2d 200, 203–4 (Mo.App.1998). These are distinct theories with different elements. Conduff, 968 S.W.2d at 204. As we shall explain, it is possible to establish a boundary by acquiescence and thereafter establish title by adverse possession

to property bounded in part by such a boundary. However, in this case, the facts set out in the summary judgment motion, even if they had not been denied, were wholly insufficient to warrant a finding that the fence post constituted a boundary under the theory of boundary by acquiescence or that defendant had adversely possessed all of an unspecified area "up to the fence post."

■ We begin our discussion with an explanation of the theory of boundary by acquiescence. If a boundary line between properties is disputed or uncertain, the parties may fix the boundary line by an express written or oral agreement or by an agreement that is presumed as a result of long acquiescence. Gillenwaters Building Company v. Lipscomb, 482 S.W.2d 409, 412 (Mo.1972); Shoemaker v. Houchen, 994 S.W.2d 40, 45 (Mo.App.1999); Conduff, 968 S.W.2d at 205; 11 C.J.S. Boundaries, section 128 (2008). If the agreement is presumed from long acquiescence, this legal theory is referred to as "boundary by acquiescence." Shoemaker, 994 S.W.2d at 45; Conduff, 968 S.W.2d at 205.

■ To prove a boundary by acquiescence, a party must show 1) an uncertain or disputed boundary between adjoining landowners and 2) acquiescence of the adjoining landowners in a definite and certain dividing line, marked by natural or artificial structures, as the boundary. Acquiescence is shown by a) mutual conduct or acts of the adjoining landowners evidencing recognition of the dividing line as the boundary, b) occupation and use by the parties up to the dividing line, and c) continuation of the mutual acts and occupation and use for a sufficiently long period of years to show the parties' mutual accep-

---

2. Defendant did not raise boundary by acquiescence as an affirmative defense or in his motion for summary judgment or memoran-

dum in support thereof. However, the trial court appears to have based its judgment at least in part on this theory.

tance of the dividing line as the boundary. *See Gillenwaters*, 482 S.W.2d at 412; *Tillman v. Hutcherson*, 348 Mo. 473, 154 S.W.2d 104, 106–07 (1941); *Shoemaker*, 994 S.W.2d at 45–46; *Conduff*, 968 S.W.2d at 205; *Aley v. Hacienda Farms, Inc.*, 584 S.W.2d 126, 128–29 (Mo.App.1979); 11 C.J.S. *Boundaries*, section 145 (2008).

■ Although parties may establish a fence line as a boundary under this theory, the mere existence of a fence at or near the boundary line between two properties is not enough, standing alone, to establish a boundary agreement. *Brinner v. Huckaba*, 957 S.W.2d 491, 494 n. 1 (Mo.App. 1997); *Aley*, 584 S.W.2d at 128; 11 C.J.S. *Boundaries*, section 128 (2008). "[T]he mere acquiescence in the existence of a fence as a barrier, for convenience or for any reason other than a boundary will not amount to an agreement as to a boundary or establish it as a true line." *Aley*, 584 S.W.2d at 128. "While the location of a fence may be a factor in determining the property line, it is not conclusive in the absence of other findings." *Kelley v. Prock*, 825 S.W.2d 896, 900 (Mo.App.1992).

■ Acquiescence establishes a *boundary*; adverse possession, on the other hand, establishes *title*. *Shoemaker*, 994 S.W.2d at 45. For a non-title holder to obtain title by adverse possession of land up to a boundary line established by acquiescence, the non-title holder must first demonstrate that a boundary by acquiescence has been established. *Shoemaker*, 994 S.W.2d at 45. Possession does not become adverse and the ten year period does not begin to run until the agreement by acquiescence has been established. *Id.* Thus, to show adverse possession of property bounded in part by a boundary by acquiescence, the ten year time period does not begin to run until after a sufficient time has elapsed to satisfy the requirements of acquiescence. *Id.*

■ Defendant's motion for summary judgment merely set out the existence of a fence *post* between the properties; it did not set out the facts necessary to establish any of the elements supporting a boundary by acquiescence. Specifically, it did not set out a dispute or uncertainty over the location of a boundary line between the properties. It did not show acquiescence in a definite and certain dividing *line*, marked by natural or artificial structures, as a boundary. It did not demonstrate mutual conduct or acts evidencing the adjoining landowners' agreement to and recognition of a boundary line; possession and use by the adjoining landowners up to the line; or continuation of those acts for a sufficient length of time to ripen into acquiescence during that time period. In this case, the facts that a single fence *post* existed and defendant had used and possessed a driveway on his side of the fence post for ten years were wholly insufficient to make a *prima facie* case of a boundary by acquiescence.

In addition, there were no facts in the motion supporting a claim of title by adverse possession to land demarcated by a boundary established by acquiescence. Not only did the summary judgment motion not set out facts indicating that a boundary by acquiescence had been established for the property claimed, but also it did not describe the precise location and boundaries of the property claimed, *see Zweemer*, 823 S.W.2d at 535, or indicate that defendant had possessed the property claimed for ten years after a boundary by acquiescence had been established. *See Shoemaker*, 994 S.W.2d at 45.

Defendant's motion for summary judgment failed to make a *prima facie* case that a boundary between the two properties had been established by acquiescence or that defendant had established title by

adverse possession to property bounded in part by a boundary by acquiescence. The trial court erred in entering summary judgment on this basis. Point five is granted.

## II. *The Driveway*

 Although the trial court entered summary judgment on the basis of adverse possession of the area up to the fence post, the motion for summary judgment also set out additional facts on the location and use of a driveway for a ten-year period in support of summary judgment on the defenses of adverse possession of or prescriptive easement in the land covered by the driveway. Plaintiff's seventh point contends that these facts do not support summary judgment on these defenses because there were genuine issues of material fact on the location of the concrete driveway in relation to the prior gravel driveway and on the length of time the concrete driveway had been in existence. In addressing this point, we will bypass the question of whether defendant's summary judgment motion made a *prima facie* case for summary judgment on these defenses because even if these facts did make a *prima facie* case, summary judgment was improper in that the record contained competent evidence of "two plausible, but contradictory, accounts of the essential facts."

Defendant's right to summary judgment on either of the affirmative defenses of adverse possession and prescriptive easement was dependent on a showing, by undisputed facts, that his possession or use of the disputed property was for a period of ten years. *See Rodgers*, 80 S.W.3d at 534; *Shapiro*, 205 S.W.3d at 274. Defendant alleged and attested that "the Driveway" had been in existence since before 1990. Plaintiff denied this allegation and supplied his affidavit that defendant's concrete driveway, which encroached on his land, had not been poured until 2005, and that prior to 2005, defendant had a gravel driveway on his land that was in a different location from a concrete driveway that was poured in 2005 and did not encroach upon plaintiff's land. Plaintiff's summary judgment response and affidavit provide competent evidence of a plausible, but contradictory, account of the essential facts. Thus, the summary judgment record demonstrates that a genuine issue exists on the material fact of whether defendant had in fact possessed a strip of plaintiff's property for ten years or more by his use and possession of having a driveway on that strip. "Where the record reasonably supports any inference other than those necessary to support a judgment for the movant, a genuine issue of material fact exists and the movant's motion for summary judgment should be overruled." *J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 761 (Mo. banc 1996). Point seven is granted.

*Conclusion*

The judgment of the trial court is reversed, and the case is remanded.

BOOKER T. SHAW, P.J. and MARY K. HOFF, J., concur.